Filed 12/4/13  P. v. Yablonsky CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055840 |
| v. | (Super.Ct.No. FVI900518) |
| JOHN HENRY YABLONSKY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed as modified.

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant, John Henry Yablonsky (defendant), guilty of first degree murder (Pen. Code, § 187, subd. (a))[1] in connection with the death by strangulation of Rita Cobb, and also found true the special circumstance allegation that defendant committed the murder during the commission of a rape (§ 261). After denying defendant's motion for new trial, the trial court sentenced defendant to state prison for the indeterminate term of life in prison without the possibility of parole.

Defendant raises various claims of error in this appeal, the details of which we recount below in our discussion of those claims. In general, defendant challenges the trial court's rulings on the admissibility of evidence, the effect of which defendant claims deprived him of his constitutional right to present a defense, and the quality of representation afforded him by his trial counsel, the effect of which defendant contends deprived him of his constitutional right to the effective assistance of counsel. We do not share defendant's view. With the exception of defendant's claim of sentencing error, which the Attorney General concedes, we conclude either error did not occur, or if it did, it was harmless. Therefore, we will affirm the judgment after modifying defendant's sentence by striking the parole revocation restitution fine.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## FACTS

This case involves the September 1985 murder of Rita Cobb. Defendant was arrested for that crime in March 2009, after a sample of his deoxyribonucleic acid (DNA) matched DNA from sperm cells found in a vaginal swab taken from Rita Cobb's body following her apparent murder in 1985. His DNA, and the fact that when interviewed by law enforcement officers defendant admitted he knew Rita Cobb but denied having had sex with her, is the evidence that connects defendant with the murder and therefore is the evidence on which the jury relied to find defendant guilty.

That Rita Cobb was murdered is undisputed. Her son, Daryl Kraemer, and his girlfriend, found Cobb's nude, decomposing body on the bed in the bedroom of her Lucerne Valley home. A wire coat hanger was wrapped tightly around her neck and knotted on the side. Marshall Franey, a San Bernardino County Deputy Coroner assigned to investigate the death, estimated, based on the moderate decomposition of the body, that Rita Cobb died at least two days before her body was discovered.

Dr. George Saukel, the forensic pathologist who performed the autopsy on Rita Cobb's body, confirmed Franey's estimate regarding the time of death. He concluded Cobb's death had been caused by both manual strangulation, as evidenced by fractures to bones in Cobb's neck, and ligature strangulation, as evidenced by a wire coat hanger wrapped tightly and twisted twice around Cobb's neck. Dr. Saukel also found sperm cells in Rita Cobb's vagina. Based on the condition of those cells, Dr. Saukel estimated sexual intercourse could have occurred as much as a day and one-half before Cobb's death, or postmortem.

3

DNA analysis of the sperm cells was performed in 1999. San Bernardino County Deputy Sheriff's criminalist Donald Jones testified based on his analysis of the DNA results that the sperm cells were from a single donor. Jones compared the DNA from the sperm cells to other DNA obtained from 16 blood samples apparently taken from the crime scene, and also obtained from known donors. Those comparisons did not produce a match.

In January 2003, another criminalist employed by the San Bernardino County Sheriff's Department conducted a more sophisticated analysis of the sperm and semen contained in the vaginal swab from Rita Cobb. This second analysis produced a complete DNA profile of 13 markers which then was entered into a nationwide database, CODIS DNA. Some years later,[2] the criminalist was notified that the sample she had entered matched defendant.

Based on the DNA match, on March 8, 2009, two San Bernardino County Sheriff's detectives contacted defendant at his home in Long Beach and questioned him about Rita Cobb. Defendant acknowledged that he knew Cobb, because he had rented the "back house" on her property, and lived there with his wife and young son for about six to nine months. Cobb lived in a second house on the same property. Defendant and his family moved out around April 1985. Defendant described his relationship with Cobb as that of landlord and tenant. He denied having any form of social relationship with

---

[2] The record does not clearly disclose when the CODIS DNA match was made, or when the criminalist was notified there was a match. We assume these events occurred shortly before law enforcement officers contacted defendant on March 8, 2009.

Cobb. Over the course of the interview, which began at defendant's home, then moved to the local police station, the detectives asked defendant three different times whether he had had a sexual relationship with Cobb. Each time defendant said no. At the conclusion of the interview, the detectives arrested defendant.

The detectives obtained a buccal swab, i.e., cells from the cheek, inside defendant's mouth. A DNA analysis of the buccal cells confirmed defendant's DNA matched the DNA obtained from the sperm and semen recovered from the vaginal swab taken from Rita Cobb.

Rita Cobb was last seen alive on Friday, September 20, 1985, at a social gathering at the home of her friends, John and Francesca. Cobb drank alcohol most of the evening. She appeared more intoxicated than usual by the time she got ready to leave around 10 or 11 p.m. Bruce Nash offered to drive Cobb home. He testified Cobb declined the offer. However, John recalled Nash did drive Cobb home in her own car, and Nash's girlfriend followed in Nash's car.

Daryl Kraemer had not been able to reach his mother by telephone over the weekend of September 21 and 22. On Monday he called her work, and learned Cobb had not come in, so he and his girlfriend drove to Cobb's home. They discovered her body around 11:30 a.m. and called authorities.

Additional facts will be recounted below as pertinent to the issues defendant raises on appeal.

**1.**

**ADMISSIBILITY OF THIRD PARTY CULPABILITY EVIDENCE**

Defendant did not put on a defense. He had intended to present evidence to show someone other than he had killed Rita Cobb. To that end he planned to introduce evidence about another unsolved homicide in which 63-year-old Helen Brooks had been killed in Apple Valley a few months before Rita Cobb was killed and DNA evidence from that crime did not match defendant's DNA. He also intended to present evidence to show Rita Cobb had a reputation for dating many different men, a penchant defendant describes as "extraordinary promiscuity," any one of whom could have killed her. The trial court excluded evidence of the Helen Brooks murder and Rita Cobb's reputation, and also sustained the prosecutor's hearsay and relevance objections when defense counsel asked Bruce Nash whether Rita Cobb had indicated she intended to go to a bar when she left the gathering at John and Francesca's house on Friday night. The trial court also excluded, on the basis of hearsay, evidence that in 1988, three years after Rita Cobb's murder and long before defendant became a suspect, the sheriff's department received a report from WeTip that an anonymous caller reported hearing William Backhoff bragging at a party that he had killed Rita Cobb.

Defendant contends the trial court's rulings are erroneous and collectively had the effect of preventing him from presenting a defense in violation of his due process right to a fair trial. Although a close issue, we disagree for reasons we now explain.

## A.  Helen Brooks Homicide

During trial, defense counsel informed the court that he intended to question various witnesses, including the criminologist, about the apparent rape and murder of Helen Brooks, an unsolved homicide defense counsel claimed "is in many respects almost identical to the Rita Cobb case."  Defense counsel could not (or at least did not) identify specific similarities but stated "there's so many ways these two cases are similar [and] because of that for the first two or three years after September 23rd of 1985, the sheriff's department treated the two cases as if they had been committed by the same person."  The prosecutor objected on the basis of relevance because there was no evidence to link the person who killed Helen Brooks to the Rita Cobb murder.  The trial court agreed and ruled the evidence inadmissible not only because it was not relevant but also because it was likely to confuse the jury.

"In general, third party culpability evidence is admissible if it 'rais[es] a reasonable doubt of defendant's guilt.'  [Citation.]  This does not mean, however, that no reasonable limits apply.  Evidence that another person had 'motive or opportunity' to commit the charged crime, or had some 'remote' connection to the victim or crime scene, is not sufficient to raise the requisite reasonable doubt.  [Citation.]  Under [*People v.*] *Hall* [(1986) 41 Cal.3d 826, 833] and its progeny, third party culpability evidence is relevant and admissible only if it succeeds in 'linking the third person to the actual perpetration of the crime.'  [Citations.]"  (*People v. DePriest* (2007) 42 Cal.4th 1, 43.)  We review a trial court's rulings on the admissibility of evidence under the abuse of discretion standard.  (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)

7

Defendant describes the evidence regarding Helen Brooks as "reverse other crime evidence," in that it showed defendant had not committed the other crime because his DNA did not match DNA obtained from Brooks. Defendant argues that if the two crimes are closely similar, and defendant was not the perpetrator of one of the crimes, "this constituted powerful circumstantial evidence that he was not the perpetrator in the other case, either." In other words, defendant claims the person who killed Helen Brooks must have been the person who also killed Rita Cobb, and therefore the Brooks homicide is circumstantial evidence of third party culpability in the Cobb homicide.

There are several defects in defendant's argument, the first of which is his premise that the person who raped Helen Brooks also was the person who killed her. As defendant argued in his own defense in this case, that premise is not necessarily true. The killer might not have been the rapist; two different people could have been involved. Therefore, the absence of defendant's DNA in the Brooks case does not eliminate him from the pool of people who might have killed her.

The second defect in defendant's argument is that even if we were to accept his initial premise, defendant did not establish the factual similarities between the Cobb and Brooks crimes. He showed only that both crimes involved older women who lived in the Lucerne Valley, and who were killed in the summer of 1985. In challenging the trial court's ruling, defendant claims he made an offer of proof that the Brooks and Cobb homicides were "in many respects almost identical." Defense counsel did make that statement, but he did not support that claim with any factual details about the Brooks homicide. In arguing the issue on appeal, defendant cites to a police report included in

8

his motion for new trial. That police report was not before the trial court when it ruled on the admissibility of the Brooks crime. Moreover, the police report, which lists several unsolved homicides involving older women, only discloses that on July 5, 1985, 63-year-old Helen Brooks was apparently killed and her body was found in an apartment located on Highway 18, in Apple Valley.

Defendant also made an offer of proof that DNA obtained in the Brooks case did not match defendant's DNA, and therefore defendant was eliminated as a suspect in that case. The prosecutor had told the trial court about the Helen Brooks case, in the course of putting on the record that he had made parts of the file in that case available to defense counsel. In describing the case to the trial court, the prosecutor said Brooks had been raped and murdered. Neither defense counsel's statement nor the facts contained in the record on appeal establish that the DNA obtained in the Brooks case was obtained from a vaginal swab of the victim. The record on appeal does not include any other details about that crime, such as how Brooks was killed or where and how her body was found. Absent those details, defendant failed to link the person who killed Helen Brooks with the homicide of Rita Cobb.[3]

We also do not accept defendant's assertion that the trial court precluded his attorney from making the necessary offer of proof. But even if we agreed, and thus

---

[3] In his new trial motion, defendant argued that blood of his own rare blood type was also found at the Brooks crime scene, but he did not support that assertion with citation to any evidence submitted in support of his new trial motion. Moreover, that evidence cuts both ways in that it suggests defendant could have killed Brooks, even though his DNA was not found at the scene.

excused the oversight in this case, the additional evidence defendant would have cited is the evidence we have recounted above. That evidence does not make the connection between the two crimes. Similarly, we do not share defendant's view that on appeal we must accept his offer of proof as true. Defendant not only has failed to cite any authority that supports this assertion,[4] the truth of his offer of proof is not supported by the facts he cites in the appellate record.

For each of the reasons discussed, we conclude defendant failed to establish the requisite link between the perpetrator of the Brooks homicide and the homicide of Rita Cobb. Therefore, defendant failed to show the Brooks homicide was relevant and could raise a reasonable doubt about his guilt in this case. Consequently, we must conclude the trial court did not abuse its discretion by ruling that evidence inadmissible at trial.

### B. Rita Cobb's Lifestyle

Citing the forensic evidence, specifically the evidence that sexual intercourse between defendant and Cobb could have occurred as much as a day and a half before Cobb's death, defendant intended to show Cobb dated many different men. That evidence would support the further argument that any one of the many men she dated could have killed her after defendant and Cobb had sex. To that end, defense counsel told the trial court he wanted to have "the jury understand, as everyone else in those—in

---

[4] Defendant cites two cases to support his claim. *Hayes v. 2831 Ellendale Place, Inc.* (1963) 223 Cal.App.2d 362, is a contract dispute; the specific page defendant cites discusses the statute of limitations on an oral contract. *People v. Keith* (1981) 118 Cal.App.3d 973, is a rape case; the page defendant cites addresses admissibility of evidence showing prior acts of consensual sex between the defendant and the victim.

1985 understood, that Ms. Cobb did have a number of gentleman [*sic*] of different ages, and she entertained them at her residence. She invited them to be there, and it was not uncommon for her to have male guests at home." The prosecutor objected on the ground such evidence was inadmissible character evidence. The trial court ruled the evidence was not relevant and excluded it. In doing so the court noted defendant had established through the testimony of Rita Cobb's son and his wife that Ms. Cobb dated and had people over to her house. Although defense counsel protested "there was more," presumably meaning he had additional questions he wanted to ask those two witnesses on that subject, the trial court denied that request and reaffirmed its ruling.

Although described as character evidence, the evidence in question is in fact evidence of third party culpability, i.e., evidence that one of the men Rita Cobb was dating or had dated could have been the person who killed her. Once again, defendant failed to make the necessary offer of proof, defendant's contrary claim notwithstanding. Defendant claimed Rita Cobb was known to date many men, and to have them over to her house. However, he did not offer any facts to support that assertion. On appeal, he cites facts set out in his pretrial motion to dismiss. Defendant did not rely on those facts in arguing the admissibility of the evidence to the trial court, and did not refer to the pretrial motion in arguing the existence and admissibility of evidence regarding what we will refer to as the victim's lifestyle. Defendant also cites a police report included in his motion for new trial. Because that motion was not filed until after trial, the trial court could not have considered the police report. Defendant claims the trial court "was probably already familiar" with that police report because in an unreported meeting in

11

chambers, the attorneys and the trial court purportedly discussed witness statements contained in that police report. The trial court might have known about the police report but that fact is not obvious from the record. Therefore, we cannot say the police report was part of the record at the time the trial court ruled the evidence about Rita Cobb's lifestyle was inadmissible to prove third party culpability.

As previously discussed, "[t]hird party culpability evidence is admissible if it is 'capable of raising a reasonable doubt of defendant's guilt. At the same time, we do not require that any evidence, however remote, must be admitted to show a third party's possible culpability. . . . [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.' [Citations.]" (*People v. Page* (2008) 44 Cal.4th 1, 38.)

Evidence the victim had dated many different men, or even that she was inclined to pick up men at local bars, does not even rise to the level of evidence of motive or opportunity to kill the victim. The conclusion one of those men killed Rita Cobb is rank speculation, rather than a logical inference drawn from circumstantial evidence. Without some fact that tends to link one of those men to the crime, the challenged evidence was not relevant. Therefore, the trial court did not abuse its discretion by excluding that evidence at trial. (*People v. Waidla*, *supra*, 22 Cal.4th at p. 724.)

12

## C. WeTip Report

Defendant contends he was denied his right under the federal constitution to present a defense because the trial court excluded not only the previously noted evidence but also evidence that in August 1988 the San Bernardino County Sheriff's Department received an anonymous tip, through WeTip, Inc., that William Backhoff had been at a party where he had been bragging about having strangled, raped, and mutilated Rita Cobb about three years earlier. Backhoff said he had picked up the victim at the bar called Zodiac, and when the victim said she was turned off sexually to him, Backhoff bragged that he strangled her until she "turned black" and then described further crimes against the victim after she was dead.

Defendant points out Backhoff had a connection to Rita Cobb, which defendant set out in his motion to dismiss based on a violation of his right to a speedy trial. According to defendant, two days after Rita Cobb's body was found, Backhoff showed up claiming he had heard they were looking for him. At that time, Backhoff acknowledged he had dated the victim and been to her house, but said he had never had sex with her. Three years later, presumably in response to the WeTip report, a deputy sheriff again contacted Backhoff. This time he repeatedly stated he had not done anything wrong. Backhoff later committed suicide.

The trial court ruled the WeTip report was inadmissible hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter stated. (Evid. Code, § 1200.) Hearsay evidence is generally inadmissible. (*Ibid.*) The statement reported to WeTip would be hearsay if defendant offered it to prove the truth of what Backhoff said,

13

i.e., that he killed Rita Cobb. If the statement were offered to show what if anything the sheriff's department did in response to the WeTip report, the report and its content is not hearsay. Defendant however did not offer the statement for its nonhearsay purpose. Instead, he contends the trial court violated his due process right to present a defense by excluding the hearsay statement from evidence.

Defendant relies on *Chambers v. Mississippi* (1973) 410 U.S. 284 (*Chambers*) to support his claim that hearsay evidence is admissible if its exclusion would deprive defendant of his right to present a defense. Our state Supreme Court explained in *People v. Ayala* (2000) 23 Cal.4th 225, that *Chambers* is limited to the specific facts of that case: "'Few rights are more fundamental than that of an accused to present witnesses in his own defense. [Citations.] [But i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' [Citation.] Thus, '[a] defendant does not have a constitutional right to the admission of unreliable hearsay statements.' [Citations.] Moreover, both we (*People v. Hawthorne* (1992) 4 Cal.4th 43, 56 []) and the United States Supreme Court (*United States v. Scheffer* (1998) 523 U.S. 303, 316 []) have explained that *Chambers* is closely tied to the facts and the Mississippi evidence law that it considered. *Chambers* is not authority for the result defendant urges here." (*Id*. at p. 269.)

The trial court did not violate defendant's due process right to present a defense by excluding the WeTip report. That report not only was hearsay, it was also provided by an unreliable anonymous source. We cannot say the trial court abused its discretion by

14

excluding that report from evidence at trial. (*People v. Waidla*, *supra*, 22 Cal.4th at p. 724.)

### D. Victim's Hearsay Statement

Defendant contends the trial court erred by sustaining the prosecutor's hearsay objection when defense counsel asked Bruce Nash if Rita Cobb indicated when she left John and Francesca's house on the night of September 20 she was going somewhere other than home. Defense counsel argued the statement was relevant because Nash would testify, after Cobb declined his offer to drive her home, she said she was going to a bar. The trial court was of the view the statement was hearsay and irrelevant. Trial counsel did not address the hearsay issue. On appeal, defendant argues Cobb's statement to Nash was admissible under *People v. Alcalde* (1944) 24 Cal.2d 177, and Evidence Code section 1250, as a statement of Cobb's intent or statement of mind. We agree with defendant.

The Supreme Court held in *People v. Alcalde*, *supra*, 24 Cal.2d 177, the murder victim's statement she was going out with Frank was admissible as a statement of her future intent which in turn is circumstantial evidence she acted in accordance with that intent. (*Id*. at pp. 187-188.) As the Supreme Court explained in *People v. Jones* (1996) 13 Cal.4th 535, "the Legislature enacted Evidence Code section 1250, which provides in relevant part that 'evidence of a statement of the declarant's then existing state of mind . . . is not made inadmissible by the hearsay rule when . . . [t]he evidence is offered to prove or explain acts or conduct of the declarant.' The legislative history of section 1250 makes it clear that this provision specifically was intended, in part, to codify the

15

*Alcalde* decision. [Citation.]" (*Id*. at p. 548.) In short, "'a statement of the declarant's intent to do certain acts is admissible to prove that he did those acts. [Citation.]' [Citation.]" (*People v. Chambers* (1982) 136 Cal.App.3d 444, 452, citing 7 Cal. Law Revision Com. Rep. (1965) p. 1235.)

Although admissible as a statement of intent, a trial court may exercise discretion under Evidence Code section 1252 to exclude such a statement if the trial court finds "the statement was made under circumstances such as to indicate its lack of trustworthiness." (Evid. Code, § 1252.) The Attorney General argues the trial court exercised that discretion in this case because Cobb was drunk at the time she made the statement, and in any event there was no evidence to show she actually went to a bar.

The trial court, in ruling the statement inadmissible, did not consider whether Cobb was drunk at the time she made the statement. Instead, the trial court focused on defense counsel's failure to cite an exception to the hearsay rule. Absent such an exception, the trial court viewed Cobb's statement as unreliable hearsay. The exception, as previously noted, is Evidence Code section 1250.

The trial court did question the relevance of Cobb's statement that she was going to a bar, because several witnesses apparently had testified they did not see her at a bar on the night in question. The trial court's relevance analysis is incorrect. Cobb's statement is relevant. Whether she actually went to a bar was an issue for the jury to decide. Cobb could have driven to a bar and been waylaid by someone in the parking lot. Or she could have gone to a bar other than the one the witnesses had patronized on the night in question. Whether Cobb actually went to a bar rather than home was relevant to the

16

defense that someone other than defendant killed Cobb. Defendant argued as much in his closing argument.

Although we conclude the trial court erred in excluding Nash's testimony regarding Rita Cobb's statement of intent, that error requires reversal only if it was prejudicial, i.e., if it is reasonably probable the jury would have reached a result more favorable to defendant if Cobb's statement had been admitted into evidence at trial. (Evid. Code, § 354.) Defense counsel effectively argued to the jury that someone other than defendant could have killed Rita Cobb. According to the forensic evidence, Cobb died no later than noon on Saturday but she could have had sex as much as a day and a half before her death. Therefore, she could have had sex with A on Thursday night but then have been killed by B sometime after that. Defense counsel noted there was no evidence to show Cobb had been sexually assaulted. Defendant also argued that Joe Saunders, whose fingerprints were found on a glass in Cobb's kitchen, could have killed Rita Cobb. The excluded evidence does not add anything to defendant's argument.

Accordingly, we conclude the trial court's error in excluding the victim's statement she intended to go to a bar rather than home was harmless.

## 2.

## NEW TRIAL MOTION

Defendant moved for a new trial on the ground he had been denied the effective assistance of counsel. The trial court denied his motion. Defendant contends the trial court erroneously relied solely on trial counsel's performance in court as the basis for

17

denying his new trial motion. According to defendant that is an error of law that we independently review. We disagree.

The trial court did cite trial counsel's courtroom performance at the hearing on defendant's new trial motion. From that defendant would have us conclude the trial court only considered that performance and did not consider the purported omissions set out in his new trial motion. We do not share defendant's interpretation of the trial court's statement.

But even if we did conclude the trial court only considered defense counsel's performance in court, we nevertheless would conclude the trial court did not err in denying defendant's new trial motion.

"'A new trial may be granted where the trial court finds that the defendant received ineffective assistance of counsel. [Citations.] To prevail on this ground, a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant in the sense that it "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." [Citations.]' [Citation.]" (*People v. Callahan* (2004) 124 Cal.App.4th 198, 212.)

Defendant did not make the required showing. Defendant asserted in his motion for new trial that his trial attorney did not properly investigate and prepare for trial and that he failed to make several motions. Among other things, defendant argued his trial attorney failed to investigate and pursue evidence that would have established a

18

connection between the murder of Rita Cobb and Helen Brooks. In particular, defendant argued that he and the person who killed Helen Brooks have the same rare blood type, one that is found in less than two percent of the population. Unfortunately, Mr. Smith, the attorney who prepared and filed defendant's new trial motion, did not support that assertion with a citation to any of the evidence submitted in support of the motion, or any evidence contained in the trial court record. Therefore, neither the trial court nor this court can determine whether that assertion is accurate.

Mr. Smith also asserted trial counsel was ineffective because he did not retain an expert to review the forensic evidence and to testify at trial. According to the evidence submitted in support of his motion, trial counsel did contact an expert and obtained a cost estimate of $3,300 to review the evidence. The record does not disclose whether trial counsel actually retained this or any other expert witness. It discloses only that trial counsel did not present expert testimony at trial. Absent a contrary showing by defendant, we must assume trial counsel's decision was sound trial strategy. (*People v. Dennis* (1998) 17 Cal.4th 468, 541.) Because defendant did not show in his new trial motion that expert testimony would have been beneficial to defendant, he has not shown trial counsel's decision was incorrect. (*Ibid.*)

Mr. Smith also argued in the new trial motion that trial counsel was ineffective because he failed to have DNA analysis conducted of hairs that were recovered from Rita Cobb's body and the bed where her body was found. According to the new trial motion one hair included a root that could have been analyzed for DNA. That hair was "completely different, color wise and lengthwise as to [defendant's] hair type." DNA

19

analysis of the hair could have produced a profile of someone other than defendant. Here again, the record does not show whether trial counsel requested a DNA analysis of the hair; it shows only that such evidence was not presented at trial.

Mr. Smith also faulted trial counsel for not conducting an extensive investigation of various witnesses, identified in a motion to dismiss, who knew Rita Cobb and could have testified about her lifestyle, specifically that she was known to date and have sex with many different men. As previously discussed, trial counsel attempted to present evidence regarding the victim's social and sex habits at trial, but the trial court excluded that evidence.

Mr. Smith also argued that trial counsel was ineffective because he did not pursue a connection between Robert Mark Edwards, a suspect in what he claims is a similar unsolved murder committed in May 1986. Law enforcement officers eliminated Edwards as a suspect because they concluded he was incarcerated at the time Rita Cobb was murdered. However, the evidence shows Edwards was not incarcerated until December 1985; Cobb was killed two months earlier in September. Moreover, the police report indicates Edwards was incarcerated from December 1985 to December 1986, which if correct means he also could not have committed a murder in May 1986. Once again, Mr. Smith showed only that trial counsel did not present evidence at trial regarding the investigation of Edwards as a suspect in this case.

Similarly, in arguing trial counsel was ineffective because he did not investigate or present evidence regarding the sheriff's investigation of Joe Saunders and William Backhoff as suspects in the murder of Rita Cobb, Mr. Smith did not submit any evidence

20

to show the results of such investigations.  The record shows only that trial counsel did not present that evidence at trial.

We will not recount the other ways in which defendant claimed his trial attorney's representation was deficient because defendant did not present sufficient evidence in his motion for new trial to support such a finding.  Absent additional evidence, such as a declaration from trial counsel, we cannot determine whether defendant's trial attorney failed to conduct the requisite investigation and preparation, or whether he did so and obtained evidence unfavorable to defendant.  In short we simply cannot determine from this record whether trial counsel's representation was deficient.  Because defendant failed to establish the first prong of his ineffective assistance of counsel claim the trial court properly denied defendant's motion for new trial.

**3.**

**EVIDENCE OF PRIOR RAPE CLAIMS**

Defendant contends the trial court erred when it ruled, if defendant testified at trial, the court would permit the prosecutor to present evidence under Evidence Code section 1108 that two women claimed defendant had raped them, one in 1982 and the other in 1996.  Defendant did not testify at trial and as a result the women did not testify.

Because he did not testify, this claim is not preserved for review on appeal.  "It is well established that the denial of a motion to exclude impeachment evidence is not reviewable on appeal if the defendant subsequently declines to testify.  (See *Luce v. United States* (1984) 469 U.S. 38 [] (*Luce*) [denial of in limine motion to preclude impeachment of the defendant with a prior conviction is not reviewable on appeal if the

defendant did not testify]; *People v. Collins* (1986) 42 Cal.3d 378, 383–388 [] (*Collins*) [prospectively adopting the *Luce* rule].)" (*People v. Ledesma* (2006) 39 Cal.4th 641, 731.)

Defendant contends this case is distinguishable from *Collins*, and that the issue is preserved even though he did not testify. We cannot see the distinction. During the in limine hearing in this case the prosecutor expressed the opinion that under Evidence Code section 1108, he could introduce the testimony of the two women who claimed to have been raped by defendant in his case-in-chief, but he chose, as a "tactical decision," not to introduce the evidence until defendant testified. Defendant did not testify, so the evidence was not introduced at trial.

In arguing the issue is preserved despite his failure to testify, defendant relies on *People v. Gonzalez* (2006) 38 Cal.4th 932 and *People v. Brown* (1996) 42 Cal.App.4th 461 [Fourth Dist., Div. 2] and he faults respondent for not addressing those cases. Neither case is relevant. In *Gonzalez*, the issue was whether the trial court erred when it refused the defendant's request for disclosure of the evidence the prosecutor intended to use to impeach two defense witnesses. The Supreme Court held the issue involved the defendant's right to discovery and therefore was preserved for review on appeal, even though the witnesses did not testify. (*Gonzalez*, at pp. 955-960.) In *Brown*, the defendant claimed the impeachment evidence was obtained in violation of his Sixth Amendment right to counsel and this court held that when the issue is purely one of law concerning a constitutional right, the defendant need not testify to preserve the claim of error. (*Brown*, at p. 471.) Defendant does not claim he was denied discovery, nor does he claim a

22

constitutional violation. Instead he contends simply that the trial court abused its discretion when it ruled the impeachment evidence was admissible.

Because defendant did not testify, the prior rape evidence was not presented at trial. Defendant contends the threat of the evidence being presented is what made him decide not to testify, and therefore was prejudicial. But that is precisely the rationale of the rule: "[I]f the defendant does not testify, any possible harm from the trial court's ruling is wholly speculative." (*People v. Ledesma*, *supra*, 39 Cal.4th at p. 731-732.) We simply cannot see how this case is distinguishable from *Collins*, notwithstanding defendant's contrary assertion.

## 4.

## INSTRUCTIONAL ERROR

Defendant contends, and the Attorney General concedes, the trial court's instruction on the felony-murder special circumstance was incorrect because it did not include the requirement of intent to kill. In 1983, the Supreme Court held in *Carlos v. Superior Court* (1983) 35 Cal.3d 131, intent to kill is an element of the felony-murder special circumstance. The Supreme Court overruled *Carlos* in 1987 in *People v. Anderson* (1987) 43 Cal.3d 1104, 1147, and held that intent to kill must be proven only if the defendant is an aider and abettor. Because the crime here occurred in 1985, *Carlos* applies. (*People v. Wharton* (1991) 53 Cal.3d 522, 586, fn. 16, [intent to kill is a requirement in cases involving a felony-murder special circumstance committed after *Carlos* but before *Anderson*.] The Attorney General concedes the trial court in this case

23

did not instruct the jury that intent to kill is an element of the felony-murder special circumstance.

The issue we must resolve is whether the instructional error was harmless. "The determination of whether *Carlos* error is harmless 'depends on application of the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [].' [Citation.] In other words, 'error in failing to instruct that a special circumstance contains a requirement of the intent to kill is harmless when "the evidence of defendant's intent to kill . . . was overwhelming, and the jury could have had no reasonable doubt on that matter."' [Citation.]" (*People v. Haley* (2004) 34 Cal.4th 283, 310 (*Haley*).)

The evidence of intent to kill in this case is overwhelming. The only issue at trial was the identity of the person who killed Cobb. According to the forensic pathologist, Rita Cobb died as the result of both manual and ligature strangulation. Defendant wrapped his hands around Cobb's throat, as evidenced by the fracture of the hyoid bone and voice box cartilage in her neck. Defendant then also strangled Cobb with a wire coat hanger, which he wrapped twice around her neck and tightened by twisting. That in our view is overwhelming evidence of intent to kill such that the trial court's error in failing to instruct the jury on that element of the felony-murder special circumstance was harmless beyond a reasonable doubt.

In arguing the error was prejudicial, defendant points to evidence that a pair of white shorts that could have been used as a gag had been found on or near Rita Cobb's face when her body was discovered. Defendant claims the evidence that he might have

24

used a gag shows he only intended to keep Cobb from screaming, and therefore failure to instruct on intent to kill was not harmless beyond a reasonable doubt. In *Haley*, *supra*, 34 Cal.4th 283, which defendant cites to support this claim, the defendant said he only pressed a pillow down over the victim's face to keep her from screaming after she interrupted him committing a burglary, and that she was alive when he left. (*Id*. at pp. 310-311.) The forensic evidence and the defendant's statement to the police were both consistent with the defendant's claim. (*Id*. at p. 311.) Therefore, the court concluded the evidence of intent to kill was not overwhelming and the instructional error was prejudicial. (*Id*. at p. 312.)

Unlike *Haley*, the evidence in this case shows defendant not only used his hands to strangle Cobb but he also used a wire coat hanger, and possibly also used a gag. That evidence overwhelmingly supports a finding of intent to kill. Therefore, we conclude the trial court's instructional error was harmless beyond a reasonable doubt. (*Haley*, *supra*, 34 Cal.4th at p. 310.)

## 5.

## INSTRUCTION TO DEADLOCKED JURY

Defendant contends the trial court effectively coerced the jury to render a verdict of guilt when it directed the jurors to continue deliberating after they announced they were deadlocked and the foreperson disclosed the split was eight for guilt and four for acquittal. We disagree.

At the outset we note defendant did not object when the trial court, after hearing the claim they were deadlocked, ordered the jurors to stop their deliberations for the day

25

and return the following morning to continue deliberating.  His failure to object arguably waives the issue for review on appeal.  (*People v. Neufer* (1994) 30 Cal.App.4th 244, 254.)  However, because defendant also claims he was denied the effective assistance of counsel as a result of counsel's failure to object, we will address the merits of his claim.

"The applicable legal principles are well established.  Under section 1140, the trial court is precluded from discharging the jury without reaching a verdict unless both parties consent or 'unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.'  We have explained that '[the] determination whether there is reasonable probability of agreement rests in the sound discretion of the trial court.  [Citation.]  The court must exercise its power, however, without coercion of the jury, so as to avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." [Citation.]'  [Citations.]"  (*People v. Sheldon* (1989) 48 Cal.3d 935, 959; see also *People v. Neufer*, *supra*, 30 Cal.App.4th at p. 254.)

The trial court in this case did not make any coercive remarks or engage in any other conduct directed at persuading the minority jurors to change their minds or acquiesce to the majority view.  After questioning the foreperson, who confirmed the jurors had made progress toward reaching a unanimous verdict each day of their deliberations, the trial court simply ordered the jurors to return the following morning and "talk to each other."  The court added it would not require the jurors to stay unless they felt like they were making progress.  In arguing the trial court's action was coercive, defendant cites the foreperson's statement, when asked why he believed the jury was

26

deadlocked, that "[e]ach juror has indicated [that] they're solid in their position." The cited fact is the essence of a deadlocked jury; it adds nothing to the analysis. Moreover, as defendant acknowledges, the foreperson also volunteered his view that further discussion might change the count.

Defendant also contends the trial court, before ordering the jurors to continue deliberating, should have instructed the jurors according to CALCRIM No. 3551 not to change their positions just because their opinion is different from that of other jurors or just because other jurors want them to change. Defendant acknowledges that neither his attorney,[5] nor the prosecutor asked for the instruction. Defendant does not cite any authority to show the trial court should have given the instruction sua sponte. Instead, he relies on *People v. Keenan* (1988) 46 Cal.3d 478, in which the Supreme Court cited the fact the trial court had given such an admonition as additional support for the conclusion the jury's verdict was not the result of coercion. (*Id*. at p. 534.) The trial court's failure to give such an instruction in this case does not alter our conclusion the trial court did not coerce the jurors to reach a verdict of guilt.

Because the trial court's actions were not coercive, there was no reason for defendant's trial counsel to object to the trial court's order directing the jurors to continue deliberating. In other words, defendant has failed to show trial counsel's performance was deficient. Absent such a showing, defendant cannot establish he was denied the

---

[5] Defendant's trial attorney apparently was ill so defendant was represented by an attorney specially appearing on behalf of his trial counsel.

effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [defendant must show both deficient performance and resulting prejudice].)

Defendant also contends the trial court violated his Sixth Amendment right to representation by counsel because his trial attorney was not present when the trial court questioned the foreperson and ordered the jurors to resume deliberating. Defendant does not dispute that he was represented by an attorney specially appearing on behalf of his trial attorney, who was ill. Instead defendant questions whether so-called "stand-in counsel" was adequately prepared to represent him during the discussion.

Defendant did not object in the trial court to his trial attorney's absence, or to stand-in counsel representing him, or to the trial court responding to the jury's declaration they were deadlocked. Therefore, defendant has not preserved this issue for review on appeal. (*People v. Roldan* (2005) 35 Cal.4th 646, 729, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421.) Moreover, because he did not object, defendant's assertions regarding stand-in counsel's ability to represent him are purely speculation.[6] Because defendant was represented by counsel, and he did not object to that representation, we must reject his Sixth Amendment claim in this appeal.

---

[6] *Moritz v. Woods* (E.D. Mich. 2012) 844 F.Supp.2d 831, which defendant cites to support his ineffective assistance of counsel claim, is not binding on this court and, in any event, has been reversed. (*Moritz v. Lafler* (6th Cir. Apr. 25, 2013) 2013 U.S. App. LEXIS 8587.)

**6.**

**DENIAL OF MOTION TO RECUSE DISTRICT ATTORNEY**

In September 2010, defendant filed a motion under section 1424 to disqualify the district attorney's office in this case because in his June 2010 reelection campaign, District Attorney Mike Ramos distributed campaign fliers that included a photograph of defendant and the fact of his arrest for the murder of Rita Cobb. Defendant appended one of the campaign fliers to his motion.[7] The flier includes a photograph of defendant, presumably his booking photo, with the caption, "John Henry Yablonsky [¶] Charged with murder in the 1985 slaying of Lucerne Valley mother Rita M. Cobb—on trial this year by Mike Ramos' Cold Case Unit." Next to the photo of defendant is a quotation, under the caption, printed all in bold letters, "It's Never a 'Cold Case.'" The quotation say, "'A case is never cold to the family of a murder victim. **That's why I have worked with the Sheriff to start the Cold Case Unit.** Using DNA evidence, we have filed murder charges in 19 cold cases. Twenty five years after the crime, Rita Cobb's family will have closure.'" The quote includes the attribution, "Mike Ramos, District Attorney."

The trial court found defendant failed to make the showing required under section 1424 that the campaign flier created a conflict that rendered it unlikely defendant would receive a fair trial. Therefore, the trial court denied defendant's motion. Defendant

---

**7** In his opening brief, defendant cites a second example but that one was attached to his motion for new trial and therefore was not part of the filing the trial court considered in ruling on defendant's motion to disqualify the district attorney's office.

contends the trial court abused its discretion. We disagree, but we will not resolve that issue, because defendant has failed to show prejudice.

The pertinent legal principals are set out in section 1424, which as defendant correctly points out, includes both the substantive and procedural rules pertinent to a motion to disqualify the district attorney's office. First, defendant's moving papers must set out the grounds upon which disqualification is sought and must include affidavits that set out the facts that support the asserted grounds. (§ 1424, subd. (a)(1).) In order to prevail, the defendant must show the conflict of interest is of such a nature as to "render it unlikely that the defendant would receive a fair trial." (*Ibid.*) The Supreme Court has construed section 1424 "as establishing a two-part test: (i) is there a conflict of interest?; and (ii) is the conflict so severe as to disqualify the district attorney from acting? Thus, while a 'conflict' exists whenever there is a 'reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner,' the conflict is disabling only if it is 'so grave as to render it unlikely that defendant will receive fair treatment.' [Citation.]" (*People v. Eubanks* (1996) 14 Cal.4th 580, 594.) "[T]he potential for prejudice to the defendant—the likelihood that the defendant will not receive a fair trial—must be real, not merely apparent, and must rise to the level of a *likelihood* of unfairness." (*Id.* at p. 592.) In other words, the defendant must show more than the appearance of a conflict or impartiality; the defendant must show an actual likelihood of unfair treatment. (*Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 104; *People v. Vasquez* (2006) 39 Cal.4th 47, 59.) "Where, as here, a defendant seeks to recuse not just an individual prosecutor but also an entire prosecuting office, he must make an

30

'especially persuasive' showing. [Citation.]" (*People v. Gamache* (2010) 48 Cal.4th 347, 361.) "On review of the trial court's denial of a recusal motion, '[o]ur role is to determine whether there is substantial evidence to support the [trial court's factual] findings [citation], and, based on those findings, whether the trial court abused its discretion in denying the motion.' [Citations.]" (*People v. Vasquez*, *supra*, 39 Cal.4th at p. 56.)

Defendant did not make the required showing in the trial court. Defendant's only claim in his recusal motion was that as a result of singling defendant out in his campaign literature, the district attorney effectively committed himself to obtaining a conviction in defendant's case. Defendant did not cite any examples in his moving papers of how the prosecutor's commitment to a conviction might result in unfair treatment to defendant. Instead defendant submitted his own declaration in which he stated that in June 2010, after the district attorney's campaign literature was mailed to voters, defendant filed a civil action against the district attorney. Within 24 hours after filing that lawsuit,[8] defendant claims he was "subjected to intense harassment in the West Valley detention Center, including, but not limited to, repeated and prolonged searches of [his] cell, having [his] court materials thrown about the cell and disorganized, having legal mail compromised, and the repeated denial of my court ordered right to use the law library."

---

[8] Defendant variously identifies the filing date of that lawsuit as June 28, 2010, and July 28, 2010.

Defendant's suggestion that the sheriff's actions are somehow attributable to the district attorney is based on speculation, not fact. Defendant failed to establish in the trial court that a conflict existed because he failed to show a real potential for unfair treatment.

Defendant argues in his opening brief that the district attorney had an intense personal stake in the outcome of defendant's trial, as a result of which there was a strong risk defendant would not be treated evenhandedly. Assuming this argument is implicit in the one defendant actually made in his trial court moving papers, and assuming further the trial court abused its discretion in denying defendant's recusal motion, we nevertheless would conclude the error is harmless.

Where the defendant does not seek review by extraordinary writ of the trial court's denial of a section 1424 motion, reversal on appeal is required only if the defendant shows actual prejudice, i.e., it is reasonably probable a result more favorable to the appealing party would have been reached absent the error. (*People v. Vasquez*, *supra*, 39 Cal.4th at pp. 66-71; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Defendant argues the trial court's presumed error was prejudicial because defendant was forced to ask about the district attorney's campaign mailer during jury selection, and also because the deputy district attorney who actually tried the case was "likely" precluded from negotiating any plea to a lesser charge.

Defendant's second argument is obviously speculation. Moreover, nothing in the district attorney's campaign flyer suggested the district attorney was committed to convicting defendant of first degree murder with the rape special circumstance. As quoted previously, the flyer stated only that defendant had been charged with murder in

the 1985 death of Rita Cobb, as a result of which her family would get closure. The mere existence of the campaign flyer does not support a conclusion defendant was denied the opportunity to negotiate a guilty plea to a lesser charge.

Defendant's need to question prospective jurors about the district attorney's campaign material in an election that occurred six months before trial also does not demonstrate prejudice. That need is not the result of a purported conflict on the part of the district attorney's office. Defendant conducted that questioning presumably to obtain a jury comprised of people who would be fair and impartial. Although defendant contends he was forced to expose the entire prospective jury pool to the district attorney's campaign flyer, that decision was not the result of the district attorney's purported conflict of interest. Moreover, by asking about the campaign flyer during voir dire, defendant presumably obtained a fair and impartial jury, i.e., one comprised of jurors who said they were not affected by the flyer and would base their verdicts only on the evidence presented in court.

In short, defendant has failed to show it is reasonably probable he would have received a more favorable result in this case if the trial court had granted defendant's section 1424 motion and the entire district attorney's office had been recused. Because he has not shown prejudice, we must conclude that even if the trial court had abused its discretion in denying his motion, that purported error is harmless in this case.

**7.**

**CHANGE OF VENUE MOTION**

In a separate but related issue defendant contends his trial attorney was ineffective because he did not file a motion for change of venue. Defendant contends that after trial counsel showed the campaign flyer to the prospective jury pool during jury selection, the entire jury venire was tainted. Therefore, he contends his trial attorney should have moved for a change of venue and failure to do so deprived him of his right to the effective assistance of counsel. Again, we disagree.

As previously discussed, in order to prevail on an ineffective assistance of counsel claim, defendant must show both deficient performance and resulting prejudice. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 687.) Where the claim of deficient performance is that counsel failed to make a motion, defendant must show the motion was meritorious. (See *People v. Mattson* (1990) 50 Cal.3d 826, 876 ["A claim of ineffective assistance of counsel based on a trial attorney's failure to make a motion or objection must demonstrate not only the absence of a tactical reason for the omission [citation], but also that the motion or objection would have been meritorious, if the defendant is to bear his burden of demonstrating that it is reasonably probable that absent the omission a determination more favorable to defendant would have resulted"].)

A meritorious motion for change of venue requires defendant to demonstrate "there is a reasonable likelihood that a fair and impartial trial cannot be had in the county." (§ 1033, subd. (a).) "'"The factors to be considered are the nature and gravity of the offense, the nature and extent of the news coverage, the size of the community, the

34

status of the defendant in the community, and the popularity and prominence of the victim."' [Citation.]" (*People v. Vieira* (2005) 35 Cal.4th 264, 279.)

Defendant has not made the required showing. Although he purports to address each of the factors set out above, in fact, he focuses on the district attorney's campaign flyer and its effect on the jurors in his trial. Defendant has shown only that the prospective jurors in the courtroom arguably were tainted as a result of defense counsel displaying the district attorney's campaign flyer and questioning them about it during jury selection. For example, although defendant mentions pretrial publicity, with respect to size of the community, defendant states that factor is not relevant in this case because all of the jurors were exposed to the campaign mailer. Defendant can only mean all of the jurors in the courtroom. To establish a meritorious motion for change of venue, however, defendant had to show he could not get a fair trial in the County of San Bernardino. (§ 1033.) Defendant has not made that showing.

Moreover, even if we were to conclude otherwise, and were to agree for purposes of this discussion that a motion for change of venue would have been meritorious, defendant has failed to demonstrate prejudice, i.e., it is reasonable defendant would have obtained a more favorable result if his trial had taken place in a different venue. In addressing prejudice, defendant contends the campaign flyer undoubtedly influenced the juror's deliberations because it effectively amounted to the district attorney vouching for defendant's guilt. Defendant's argument is speculation. Moreover, we know from the fact that the juror's were questioned about the campaign flyer during voir dire that they must have said they could be fair and impartial even though they had seen the flyer.

35

Otherwise, they would have been excused for cause.  As explained in *People v. Prince* (2007) 40 Cal.4th 1179, "Pervasive publicity alone does not establish prejudice.  [Citation.]  Jurors who have been exposed to publicity still may serve.  ""'It is sufficient if the juror can lay aside [their] impression or opinion and render a verdict based on the evidence presented in court.'"'  [Citations.]"  (*Id.* at p. 1214.)

In summary, defendant has not established either element of his ineffective assistance of counsel claim based on trial counsel's failure to file a motion to change the venue of defendant's trial.  Therefore, we reject that claim.

**8.**

**PAROLE REVOCATION FINE**

Defendant's final claim of error is the trial court improperly imposed a so-called parole revocation fine under section 1202.45.  The Attorney General concedes section 1202.45 was not enacted until 1995 and therefore application of the statute to defendant's crime, which was committed in 1985, would violate ex post facto principles.  (See *People v. Callejas* (2000) 85 Cal.App.4th 667, 678, citing *Johnson v. United States* (2000) 529 U.S. 694, 701-702.)  The Attorney General also concedes because the trial court sentenced defendant to serve a life term without the possibility of parole, the statute does not apply to defendant.[9]  (See *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1184.)

---

[9]  Section 1202.45 states, in pertinent part, that it applies "[i]n every case where a person is convicted of a crime and [whose] sentence includes a period of parole . . . ."

36

The Attorney General's concessions are appropriate.  Therefore, we will strike the $10,000 parole revocation fine the trial court imposed on defendant under section 1202.45.

## DISPOSITION

Defendant's sentence is modified by striking the $10,000 fine the trial court imposed under section 1202.45.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____

J.

We concur:


HOLLENHORST_____

Acting P. J.


KING_____

J.